**08-1589-cv**
**Aguas Lenders Recovery Group LLC v. Suez, S.A.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: April 15, 2009          Decided: October 23, 2009)

Docket No.  08-1589-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AGUAS LENDERS RECOVERY GROUP LLC,

        Plaintiff-Appellant,

            v.

SUEZ, S.A., SOCIEDAD GENERAL DE AGUAS DE BARCELONA, S.A.,

        Defendants,

AGUA Y SANEAMIENTOS ARGENTINOS, S.A.,

        Defendant-Appellee.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, CABRANES, and SACK, Circuit Judges.

    Appeal from a judgment of the United States District Court for the Southern District of New York (Robert L. Carter, Judge) dismissing a complaint on the grounds of forum non conveniens. The district court held that a non-signatory to agreements containing forum selection provisions is not bound by these provisions even if it is a successor in interest to a signatory and otherwise bound by the agreements.  We vacate the judgment.

_____

[*]The Clerk of the Court is instructed to amend the caption as shown.

1

JENNIFER R. SCULLION (Louis M. Solomon, Daniella M. Rudy, on the brief), Proskauer Rose LLP, New York, New York, for Plaintiff-Appellant.

JOHN J. KERR, Jr., Simpson Thatcher & Bartlett LLP, New York, New York for Defendant-Appellee.

WINTER, Circuit Judge:

Aguas Lenders Recovery Group, LLC ("ALRG") appeals from Judge Carter's dismissal of its complaint on the ground of forum non conveniens. The principal issue is whether, for the purposes of the doctrine of forum non conveniens, a non-signatory to an agreement may be bound by a forum selection clause and forum non conveniens waiver contained in contracts entered into by an entity alleged to be a predecessor in interest.

We hold that such a non-signatory may be so bound. We therefore vacate the judgment and remand for limited discovery and a hearing on whether Agua y Saneamientos Argentinos, S.A. ("AySA") is a successor in interest to Aguas Argentinas, S.A. ("Aguas").

BACKGROUND

This is an appeal from a dismissal of a complaint without a factual hearing on the grounds of forum non conveniens. We therefore accept the facts alleged in the complaint as true. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 93 n.1 (2d Cir.

2

2000).[1]

In 1992, the Republic of Argentina solicited bids from private companies for a thirty-year concession, which allowed the winning bidder to modernize and operate Buenos Aires' residential water and sewer system and collect fees for its use. Until then, a wholly government-owned company, Obras Sanitarias de la Nación, had provided the services.

Aguas was the winning bidder. It consisted of a consortium of seven companies that included two multinational water companies, Suez, S.A., and Sociedad General de Aguas de Barcelona, S.A. On April 28, 1993, Aguas entered into the concession agreement with the Argentine government and was thereafter incorporated under the laws of Argentina. Under the terms of the concession, the Argentine government ceded to Aquas the right to possess and use certain assets necessary to the operation and maintenance of the water and sewer system, but expressly reserved title to the assets. Aguas provided water and sewer services to Buenos Aires from 1993 to 2006.

The concession was expected to require $4.1 billion in

---

[1]The factual recitation here, while primarily taken from the complaint, is supplemented with information from affidavits. See, e.g., Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 149 (2d Cir. 1978) (en banc) ("The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties -- a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York in determining forum non conveniens motions."); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir.) cert. denied, 352 U.S. 871 (1956) ("[I]n determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties.").

capital investments over its duration, but a substantial portion had to be invested early for modernization and expansion of the systems. Aguas secured financing, primarily by recourse to international capital markets, including the United States. On July 15, 2004, following a series of defaults on the loan agreements, Aguas restructured a number of these loans in two interim financial agreements ("IFA's"). Pursuant to these agreements, the lenders bought out some of Aguas's debt in exchange for payment of past-due interest according to a schedule of installments. The IFA's contained a New York forum selection clause and a <u>forum</u> <u>non</u> <u>conveniens</u> waiver (collectively "forum provisions"). They also contained a New York choice of law provision and a provision binding "successors and assigns."[2]

In January 2005, Aguas defaulted on the interest payments owed under the IFA's. Subsequently, in July 2005, Aquas initiated a contractually established procedure for the termination of the concession. Thereafter, on March 21, 2006, the Argentine government terminated the concession, alleging that Aguas had failed to meet its obligations under the concession, at

---

[2]The IFA's differ somewhat with respect to the relevant provisions. One contains a New York choice of law provision, a forum selection clause providing that "any legal action, suit or proceeding against the Company or any Purchasing Sponsor arising out of or relating to this Agreement or the other Transaction Documents may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York", a <u>forum</u> <u>non</u> <u>conveniens</u> waiver, and a provision binding successors. The second IFA contains substantially similar provisions save that it does not include a <u>forum</u> <u>non</u> <u>conveniens</u> waiver.

least in part due to toxic levels of nitrates found in various water sources. The Argentine government temporarily assumed operation of the water and sewer facilities pursuant to an executive decree. It soon after assigned the concession to AySA, the appellee here, an entity incorporated on March 3, 2006 for that purpose.

The Argentine government currently owns ninety percent of AySA's stock while AySA's employees, virtually all of whom are former employees of Aguas, own the remaining ten percent pursuant to an employee stock ownership program. The assets transferred to AySA included not only the concession itself but physical assets that had been built, improved, or acquired with the money borrowed by Aguas. No payment was made to Aguas for the transfer of the assets, or to any of its lenders on the outstanding debt.

After the Argentine government terminated the concession with Aguas, Aguas filed for protection from its creditors on April 28, 2006. At the time of the district court's decision under review, Aguas's insolvency proceedings were pending in Argentina.

ALRG was formed under the laws of New York. It is composed of original and subsequent parties to various loan agreements with Aguas between 1998 and 2004. ALRG's constituent members include entities organized under the laws of Delaware, Germany, the Cayman Islands, the British Virgin Islands, and the Bahamas.

On September 29, 2006, these various lenders assigned to ALRG their claims to unpaid amounts under financing agreements with Aguas. ALRG appears to hold no assets other than the claims based on the loan agreements.

On September 29, 2006, ALRG brought the present action against AySA to recover on the defaulted loans and IFA's.[3] ALRG's complaint alleged that AySA is "not entitled to step into Aguas'[s] shoes, yet disclaim Aguas'[s] loans" and is liable to ALRG for the full amount of Aguas's loans, unpaid interest, and other charges. Specifically, ALRG alleged that AySA: (i) as successor in interest to Aguas, breached the underlying loan agreements, which had been modified by the IFA's; and (ii) received a fraudulent transfer of Aguas's assets to AySA.

On March 3, 2008, the district court dismissed ALRG's claims against AySA on the ground of forum non conveniens. See Aguas Lenders Recovery Group, LLC v. Suez S.A., 2008 WL 612669 (S.D.N.Y. Mar. 3, 2008). The court reasoned that "district courts need not afford great deference to waivers of forum non conveniens upon non-signatories, even where the non-signatory is an alleged successor to the waiver." Id. at *4 (citing Yung v. Lee, 160 F. App'x 37, 40 (2d Cir. 2005)). It concluded that because neither party to the suit was a signatory to the IFA's

---

[3]The complaint included claims against Suez, S.A., and Sociedad General de Aguas de Barcelona, S.A. ALRG settled its claims with these two defendants prior to the district court order that is the subject of this appeal.

and the defendant "did not even exist when the agreements were created," ALRG could not invoke the forum provisions. Id. Absent a binding contractual provision, the district court declined to apply the strict, contract-based forum non conveniens analysis dictated by M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972), which held that contractual forum selection clauses should be enforced absent a showing of unreasonableness, fraud, or overreaching. Instead, applying the traditional forum non conveniens analysis set out by Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), the district court concluded dismissal was appropriate. See Aguas, 2008 WL 612669 at *4, *9. ALRG then brought this appeal.

DISCUSSION

A district court's dismissal of a complaint on the ground of forum non conveniens is reviewed for abuse of discretion. Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005). A district court abuses its discretion in dismissing on the ground of forum non conveniens when its decision "(1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003) (citations omitted). We disagree with the district court's conclusion that

7

because AySA was a non-signatory of the contracts at issue, it was per se not bound by their forum provisions for purposes of applying the doctrine of forum non conveniens.

The enforcement of forum selection clauses in international disputes is governed by M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). M/S Bremen noted the important role of forum selection and choice of law clauses in eliminating uncertainty in international commerce and held that such clauses are entitled to a presumption of enforceability, unless "enforcement would be unreasonable and unjust, or . . . the clause was invalid for such reasons as fraud or overreaching." M/S Bremen, 407 U.S. at 15. Thus, where parties contract to a so-called mandatory forum selection clause, in which they agree in advance on a forum that is exclusive of all others, the choice of forum is accorded the M/S Bremen presumption of enforceablity. Phillips v. Audio Active Ltd., 494 F.3d 378, 386 (2d Cir. 2007).

In contrast, where parties contract to a so-called permissive forum selection clause, that is, one that designates a forum in advance, but does not preclude a different choice, the M/S Bremen presumption of enforceability does not apply. See id.; see also Blanco v. Banco Industrial de Venezuela, S.A., 997 F.2d 974, 979-80 (2d Cir. 1993). Instead, in such cases, the traditional forum non conveniens standards articulated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947),

8

apply. Blanco, 997 F.2d at 980; see also Iragorri v. United Techs. Corp., 274 F.3d 65, 71-74 (2d Cir. 2001) (en banc) (articulating three-step forum non conveniens analysis based on Gilbert).

We need not decide whether the forum selection clauses in the present matter are, standing alone, mandatory or permissive. At least one of the contracts -- one of the IFA's -- contains a waiver of any claims of forum non conveniens in addition to a forum selection clause. The combination of these clauses amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum, as ALRG did here. See AAR Int'l, Inc. v. Nimelia's Enter. S.A., 250 F.3d 510, 525-26 (7th Cir. 2001) ("[I]n this case we have more than merely a permissive forum selection clause; we have such a clause plus unambiguous language providing that the lessee shall not object to venue . . . on the ground . . . [of] inconvenient forum. . . . [W]e conclude that the stricter standards announced in Bremen . . . should control . . . ."). On the present record, it appears that litigation over that IFA involves issues, witnesses, and documentary evidence that almost fully overlap with the other claims. If that part of the litigation must remain in New York, it would be quite inconsistent with the purposes of forum non conveniens to dismiss the remaining claims under that doctrine. Therefore, we see no reason to engage in further inquiry as to

9

the mandatory or non-mandatory nature of the forum selection clauses standing alone.

We thus turn to the issue of whether, even if successorship doctrine binds a non-signatory to the obligations of a contract, such a non-signatory/successor is not bound by a mandatory forum selection clause and may freely invoke the doctrine of forum non conveniens. We conclude that, if successorship is established, a non-signatory is subject to the M/S Bremen presumption of the enforceability of mandatory forum selection clauses.

Any other conclusion would be inconsistent with the rationales of both successorship doctrine and M/S Bremen. Successorship doctrine prevents parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations. See United States v. Mexico Feed and Seed Co., Inc., 980 F.2d 478, 487 (8th Cir. 1992); Anspec Co. v. Johnson Controls, Inc., 922 F.2d 1240, 1246 (6th Cir. 1991). We see no reason to treat forum selection provisions differently from other contractual obligations. As M/S Bremen explained, a forum selection clause involving sophisticated parties to an international transaction is an obligation that is calculated by parties into the cost of a contract. See M/S Bremen, 407 U.S. at 14 ("[I]t would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in

their calculations."). Consequently, a forum selection clause is integral to the obligations of the overall contract, and a successor in interest should no more be able to evade it than any other obligation under the agreement.

We find ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause. See, e.g., Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 456-57 (9th Cir. 2007) (holding that forum selection clauses applied to non-signatories because larger contract involved transactions that included non-signatories); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202-04 (3d Cir. 1983) (binding a non-signatory third-party beneficiary to a forum selection clause), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989); TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc., 915 F.2d 1351, 1354-55 (9th Cir. 1990) (applying M/S Bremen to enforce forum selection clause against non-signatory plaintiff); Marano Enters. of Kansas v. Z-Teca Rests., L.P., 254 F.3d 753, 757-58 (8th Cir. 2001) (holding non-signatories were bound by forum selection clause because non-signatories were "closely related" to the signatory or had acquiesced to clause by voluntarily bringing suit with signatories); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998) (holding

11

non-signatories bound to forum selection clause on grounds that the non-signatories, who had provided letters of credit to signatories, had interests in the litigation that were "directly related to, if not predicated upon" those of the signatories (citation omitted)); see also Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." (citations omitted)); Bonny v. Soc'y of Lloyd's, 3 F.3d 156, 162-63 (7th Cir. 1993) (subjecting non-contracting defendants to forum selection clause because integrally related to contracting defendants such that suit should be kept in a single forum). Cf. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297 & n.8 (3d Cir. 1996) (reversing district court's dismissal, on ground of forum selection clause, of all of plaintiff's claims as to non-signatories to those agreements, except for one Italian corporation who plaintiff alleged was successor to signatory).[4]

---

[4]In arguing to the contrary, defendants rely on two summary orders, Yung v. Lee, 160 F. App'x 37 (2d Cir. 2005), and Acosta v. JPMorgan Chase & Co., 219 F. App'x 83 (2d Cir. 2007), which, of course, do not provide binding authority. See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 370 n.11 (2d Cir. 2003) (noting that summary order disposition is not precedential).

Even if they were binding authority, however, neither decision would be dispositive of the present appeal. In Yung, the district court accorded a "strong favorable presumption" to the plaintiffs' choice of a New York forum to resolve a dispute. See Yung, 160 F. App'x at 40. While Yung cautioned against applying forum selection clauses to non-signatories, it did not involve a claim that the non-signatory defendants were successors in interest to a party to the contract. The appellants in Yung disputed only the level of deference accorded their choice under the traditional forum non conveniens analysis. Id.

Nor does Acosta lend support to AySA's claims. In that case, the successorship issue was never reached. The court concluded instead that the

12

The successorship issue must, therefore, be resolved for purposes of applying forum non conveniens. As a threshold matter, the parties dispute whether the question is governed by the law of New York or of Argentina. ALRG urges that New York law applies but argues that its complaint contains factual allegations sufficient to support a theory of successorship under either New York or Argentine law. In response, AySA contends that Argentine law applies, but that, in any event, no successorship finding is possible under the law of either Argentina or New York.

We intimate no view as to, inter alia, whether New York or Argentine law applies or whether the outcome on the merits depends upon the choice of law. For the reasons stated below, we believe that the present record is not sufficient to allow us to dispose of this case without factual findings by the district court, and it would be unwise for us to resolve legal issues that, after factual findings are made, may drop from the case.

Under New York law, the general rule is that an asset purchaser is not liable for the seller's debts. New York recognizes four common-law exceptions to this rule: "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged

plaintiffs' claims did not arise out of the contract containing the relevant forum provision. Acosta, 219 F. App'x at 86 n.2.

13

with a seller; and (4) a buyer that is a mere continuation of a seller." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003). Thus, for example, "when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's . . . liabilities, notwithstanding the traditional rule." Nettis v. Levitt, 241 F.3d 186, 193 (2d Cir. 2001), overruled on other grounds by Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006). Similarly, ALRG has submitted affidavits stating that under Argentine law, the transfer of a going concern to another commercial entity that provides the same "commercial activities . . . in the same building . . . [with] identical merchandise . . . directed to the same clients" may subject that entity to the liabilities of the predecessor.

ALRG argues that it has alleged a prima facie claim that AySA was a successor in interest to Aguas. Specifically, ALRG claims that Aguas's revenues were directly linked to Aguas's development of infrastructure and the expansion of the existing municipal water and sewer system in Buenos Aires, that the loans on which ALRG now seeks to recover were made to Aguas for this purpose, that infrastructure improvements were made for which Aguas was entitled to compensation under the terms of the concession, and that the Argentine government terminated the

14

concession, Aguas's principal asset, and assumed control of Aguas under the name of AySA, in which it maintained a ninety percent ownership interest.  In so doing, ALRG alleges that AySA assumed operating control of the facilities and infrastructure improvements, as well as business channels, to deliver, without interruption, the same services to Buenos Aires as Aguas.  ALRG finds further support for its theory in an alleged continuity of both employees and management, of ten percent equity ownership through an employee stock ownership program, of assets, including customer lists and accounts receivable, and of contracts. Finally, ALRG notes that the agreements at issue expressly bind Aguas's "successors and assigns."

Under both New York and what little we know of Argentine law, the successor issue is highly fact-specific and, given the present record, cannot be resolved with assurance in favor of one party or the other.  ALRG's complaint does allege facts that, if proven, might support a successorship finding.  The district court's conclusion that a non-signatory per se could not be bound by the forum provisions obviated the need to resolve the various issues of law and fact relevant to the successorship question. Because these issues are better left to resolution by the district court in the first instance, we remand for discovery and a hearing to ascertain, for the purposes of the claim of forum

non conveniens, whether Argentine or New York law applies,[5] and whether Aguas is a successor in interest to AySA bound to the IFA's and loan agreements.  In light of our disposition of this appeal, we do not reach the parties' additional arguments regarding whether ALRG's claims are nonetheless barred under the Foreign Sovereign Immunities Act and the act-of-state doctrine.

CONCLUSION

For the foregoing reasons, the judgment is vacated and the case remanded for further proceedings.

---

[5]Given the disputed issue of governing law and the fact-intensive nature of the successorship inquiry, the district court should make findings under both New York and Argentine law to facilitate appellate review and avoid another remand.

16