20-3131
Fasano v. Guoqing Li

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2020

(Argued:  May 24, 2021                              Decided:  August 26, 2022)

Docket No. 20-3131

_____

JOE FASANO, ALTIMEO OPTIMUM FUND, ALTIMEO ASSET
MANAGEMENT, Individually and On Behalf of All Others
Similarly Situated,

*Plaintiffs-Appellants*,

- v. -

GUOQING LI, PEGGY YU YU, DANGDANG HOLDING
COMPANY, LTD., E-COMMERCE CHINA DANGDANG INC.,
KEWEN HOLDING CO. LTD., SCIENCE & CULTURE LTD., FIRST
PROFIT MANAGEMENT, LTD., DANQIAN YAO, LIJUN CHEN,
and MIN KAN,

*Defendants-Appellees*,

RUBY RONG LU, KE ZHANG, and XIAOLONG LI,

*Defendants.*[*]

_____

Before: KEARSE, LYNCH, and CHIN, *Circuit Judges*.

Appeal from an August 2020 judgment of the United States District Court for the Southern District of New York, Katherine Polk Failla, *Judge*, dismissing, on the ground of forum non conveniens, plaintiffs' amended complaint alleging negligent misrepresentation, breach of fiduciary duty, and violations of §§ 10(b), 13(e), and 20(a) of the Securities Exchange Act of 1934, and rules promulgated thereunder, in connection with a 2016 "going-private" merger involving defendant E-Commerce China Dangdang Inc. ("Dangdang") and the purchase by Dangdang's controlling shareholders of its outstanding publicly-traded shares, listed as American Depositary Shares ("ADSs") on the New York Stock Exchange. The present dismissal follows proceedings on remand from this Court, which vacated a 2017 forum-non-conveniens dismissal of the original complaint, for reconsideration in light of a forum selection clause governing Dangdang ADSs and calling for securities law claims to be litigated in a Manhattan, New York, court, *see Fasano v. Yu*, 921 F.3d 333 (2d Cir.

---

[*]     The Clerk of Court is instructed to amend the official caption to conform with the above.

2019).  On remand, the district court, noting that the newly filed amended complaint alleged essentially the same facts as the original complaint but added two federal securities claims to which it sought to link the original common-law claims, found the forum selection clause valid and enforceable against only five of the 13 defendants, and applicable to only a narrow subset of plaintiffs' claims, to wit, their federal securities claims.  The court again dismissed the action on forum non conveniens grounds, concluding that a forum selection clause that is applicable to so few claims and defendants did not warrant retention of an action that is almost entirely between foreign parties and that arose from a merger executed in a foreign jurisdiction.  The court denied as moot an alternative motion by defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint for failure to state a claim.  *See Fasano v. Li*, 482 F.Supp.3d 158 (S.D.N.Y. 2020).

On appeal, plaintiffs argue principally that the district court erred in concluding that the forum selection clause was not applicable to all of the defendants and to all of plaintiffs' claims and in according unwarranted weight to public-interest factors pointing toward dismissal.  They also urge, if the case is reinstated, that we rule that defendants had waived their right to move for a Rule 12(b)(6) dismissal of the amended complaint.

We conclude that the district court principally misinterpreted the scope of the forum selection clause, thereby undercounting the number of defendants covered by that clause; and that the court attributed undue weight to a Cayman Islands interest in deciding plaintiffs' claims, given that the controlling contract requires all common-law claims to be submitted to arbitration in New York, and given that the only claims that could be adjudicated in the Cayman Islands would be United States federal securities claims as to which the law is unsettled. We reject plaintiffs' contention that defendants' right to seek dismissal of the amended complaint for failure to state a claim has been waived; we vacate the judgment and remand for consideration of defendants' Rule 12(b)(6) motion to dismiss.

Vacated and remanded.

SAMUEL J. LIEBERMAN, New York, New York (Ben Hutman, Sadis & Goldberg, New York, New York, on the brief), *for Plaintiffs-Appellants*.

SCOTT MUSOFF, New York, New York (Skadden, Arps, Slate, Meagher & Flom, New York, New York, on the brief), *for Defendants-Appellees*.

KEARSE, *Circuit Judge*:

Plaintiffs Joe Fasano, Altimeo Optimum Fund, and Altimeo Asset Management, suing individually and on behalf of others similarly situated, appeal from an August 2020 judgment of the United States District Court for the Southern District of New York, Katherine Polk Failla, *Judge*, dismissing, on the ground of forum non conveniens, their amended complaint against defendants E-Commerce China Dangdang Inc. ("Dangdang"), its controlling shareholders, and others, alleging negligent misrepresentation, breach of fiduciary duty, and violations of §§ 10(b), 13(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and rules promulgated thereunder, in connection with Dangdang's 2016 "going-private" merger and the purchase by its controlling shareholders of its outstanding publicly-traded shares, listed as American Depositary Shares (or "ADSs") on the New York Stock Exchange (or "NYSE"). The present dismissal follows proceedings on remand from this Court, which vacated a 2017 forum-non-conveniens dismissal of the original complaint, for reconsideration in light of a forum selection clause governing Dangdang ADSs and calling for United States securities law claims to be litigated in a Manhattan, New York, court, *see Fasano v. Yu*, 921 F.3d 333 (2d Cir. 2019). On remand, the district court, noting that the newly filed amended complaint alleged

5

essentially the same facts as the original complaint but added two federal securities claims to which it sought to link the original common-law claims, held that the forum selection clause was valid and enforceable against only five of the 13 named defendants and was applicable to only a narrow subset of plaintiffs' claims, to wit, their federal securities claims. The court again dismissed the action for forum non conveniens, concluding that a forum selection clause that is applicable to so few claims and so few defendants did not warrant retention of an action that is almost entirely between foreign parties and that arose from a merger executed in a foreign jurisdiction. The court denied as moot an alternative motion by defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint for failure to state a claim. *See Fasano v. Li*, 482 F.Supp.3d 158 (S.D.N.Y. 2020).

On appeal, plaintiffs argue principally that the district court erred in concluding that the forum selection clause was not applicable to all of the defendants and to all of plaintiffs' claims, and in according unwarranted weight to public-interest factors pointing toward dismissal. They also urge us, if the case is reinstated, to rule that defendants had waived their right to move for a Rule 12(b)(6) dismissal of the amended complaint.

For the reasons below, we conclude that the district court principally misinterpreted the scope of the forum selection clause, thereby undercounting the number of defendants covered by that clause; and that it attributed undue weight to a Cayman Islands interest in deciding plaintiffs' claims, given that the controlling contract requires all common-law claims to be submitted to arbitration in New York, and that the only claims that could be adjudicated in the Cayman Islands would be United States federal securities claims as to which the law is unsettled. We thus reverse the dismissal for forum non conveniens.

We reject plaintiffs' contention that defendants' right to seek dismissal of the amended complaint for failure to state a claim was waived for failure to so move with their original forum-non-conveniens motion. We vacate the judgment and remand for consideration of defendants' Rule 12(b)(6) motion to dismiss.

## I. BACKGROUND

The basic factual allegations of the original complaint and the amended complaint, which superseded the original complaint but contains essentially the same factual assertions, have been described in prior opinions of the district court and this

Court, familiarity with which is assumed. *See Fasano v. Li*, 2017 WL 6764692, *1-*3 (S.D.N.Y Dec. 29, 2017) ("*Fasano I*"), *vacated and remanded sub nom. Fasano v. Yu*, 921 F.3d 333, 337 (2d Cir. 2019) ("*Fasano II*"); and *Fasano v. Li*, 482 F.Supp.3d 158, 162-64 (S.D.N.Y. 2020) ("*Fasano III*"). Briefly, the amended complaint and the affidavits submitted with respect to the forum-non-conveniens motions indicated the following.

A. *The Parties*

Dangdang is an e-commerce company incorporated in the Cayman Islands and headquartered in Beijing, China. "It is commonly known as the *Amazon.com* of China." (Amended Complaint (or "A.C.") ¶ 40). It is currently a wholly-owned subsidiary of defendant Dangdang Holding Company, Ltd. ("DHC"), a company also incorporated in the Cayman Islands and headquartered in Beijing.

Dangdang was founded in 2000 by defendant Guoqing Li ("Li" or "Guoqing Li"), who was its Chief Executive Officer and one of its controlling shareholders, and his wife, defendant Peggy Yu Yu ("Yu"), who was a shareholder and Dangdang's Executive Chairwoman. The other individual defendants include Danqian Yao ("Yao"), Lijun Chen ("Chen"), and Min Kan ("Kan"), who were officers

8

or directors of Dangdang at the time of the going-private merger. These individual served defendants are all nationals of China.

Defendants Kewen Holding Co. Ltd. ("Kewen") and Science & Culture Ltd. ("S&C") are limited companies incorporated in the British Virgin Islands; they are principally investment holding vehicles controlled by Li. Li is the sole owner of Kewen and a 60% owner of S&C. Defendant First Profit Management, Ltd. ("First Profit"), incorporated in the British Virgin Islands, is principally an investment holding vehicle owned by Yao.

The above five individuals, along with Dangdang's parent company DHC and the three British Virgin Island entities, are alleged to have been Dangdang's "Controlling Group" (*see* A.C. ¶¶ 2, 9-19) with respect to Dangdang's going-private merger. Dangdang and those nine entities (collectively "Defendants") are the defendants-appellees on this appeal.

In addition to those 10 entities, plaintiffs named as defendants, but did not serve, three individuals who are not appellees: Ruby Rong Lu ("Lu"), Ke Zhang ("Zhang"), and Xiaolong Li ("Xiaolong Li"). (*See* Part I.B. below.)

Plaintiffs are former owners or holders of Dangdang ADSs. Fasano is a resident of New York. Plaintiffs Altimeo Optimum Fund and Altimeo Asset

9

Management, are, respectively, a French investment fund and its French investment manager.

B. *The Events of 2016*

Dangdang became a publicly traded company in 2010, with its shares trading as ADSs on the New York Stock Exchange, covered by a Deposit Agreement to which Dangdang, The Bank of New York Mellon as Depositary, and "all Owners and Holders from time to time of American Depositary Shares issued hereunder" were parties. (Amended Complaint Exhibit 5 (the "Deposit Agreement").) Ownership of ADSs was evidenced by American Depositary Receipts ("ADRs").

The initial public offering price of Dangdang shares was $16.00 per ADS share. In the following years, when Dangdang's shares were trading at lower prices, Li repeatedly stated publicly that the company should be valued in the range of $16 to $22 per share.

In mid-2015, Dangdang's share price had further declined, reaching $6.51 per ADS share on July 8, 2015, due to a Chinese Stock market crash; but the Chinese Stock market rebounded by 8.1% on July 9. Taking advantage of the 12-hour time difference, with the Chinese market closing before the United States markets opened,

Li and the Controlling Group exploited Dangdang's low stock price by making an offer to Dangdang to buy out Dangdang's minority stockholders at $7.81 per ADS share before the United States markets opened on July 9, 2015.

The Controlling Group's offer to Dangdang was coercive because the Controlling Group, which included the CEO and the Chairwoman, held 83.6% of the company's voting power. Dangdang appointed a special committee to evaluate the offer. The members were defendants-non-appellees Lu, Zhang, and Xiaolong Li. While the committee was ostensibly independent, its supposed impartiality was a sham because, *inter alia*, Lu, who chaired the committee, was financially dependent upon Guoqing Li, and the attorneys retained by committee were also counsel for Dangdang, having been so chosen by Guoqing Li.

The special committee proceeded to recommend that Dangdang accept the Controlling Group's $7.81 per share offer for the ADSs despite there being an offer from a private equity firm at $8.80 per share, and despite the fact that that firm's offer was an all-cash offer, while the Controlling Group was to finance its offer in part out of the Dangdang's own available cash. The special committee also refused to insist that the proposed going-private merger be subject to approval by a majority of the

minority shareholders. And it agreed to allow the Controlling Group to reduce its offering price to $6.70 per share.

The going-private merger closed in September 2016.

C. *The Present Action and the Forum Selection Clause*

Plaintiffs commenced the present putative class action in November 2016 to challenge the merger, asserting, *inter alia*, claims of breach of fiduciary duty, negligent misrepresentation, and violation of § 13(e) of the Exchange Act. The Dangdang ADRs contained a forum-selection clause ("Forum Selection Clause" or "Clause"), embedded in an arbitration clause which, as quoted by the district court in *Fasano III*, provided in part as follows:

> "Any controversy, claim[,] or cause of action . . . arising out of or relating to . . . the American Depositary Shares . . . shall be settled by arbitration . . . ; provided, further, that *any such controversy, claim[,] or cause of action . . . relating or based upon the provisions of the Federal securities laws of the United States* or the rules and regulations promulgated thereunder shall *be submitted to arbitration . . . if, but only if, so elected by the claimant. . . . Any controversy, claim[,] or cause of action . . . not subject to arbitration . . . shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York.*"

*Fasano III*, 482 F.Supp.3d at 163 (quoting Deposit Agreement's Exhibit A § 23 (emphases ours)). The United States District Court for the Southern District of New York, in which this action was brought, is located in the Borough of Manhattan. All of the defendants who have been served have nonetheless moved for dismissal of the complaint on the ground of forum non conveniens.

In *Fasano I*, 2017 WL 6764692, the district court granted the motion. On appeal, this Court vacated the judgment, noting that the district court had not discussed the ADRs' Forum Selection Clause. We remanded for the court to consider the effect of that clause. *See Fasano II*, 921 F.3d 333.

On remand, after Defendants indicated that they would continue to seek dismissal for forum non conveniens, plaintiffs amended the complaint, reiterating their § 13 and common-law claims, and adding claims under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all defendants, and claims under § 20(a) of the Exchange Act against Guoqing Li and Yu. The amended complaint asserted that Defendants owed heightened fiduciary duties to plaintiffs and the putative plaintiff class under the Sarbanes-Oxley Act Code of Conduct and NYSE Listing Standards adopted by Dangdang. (*See* A.C. ¶ 171.)

13

Defendants renewed their motion to dismiss for forum non conveniens and moved alternatively for dismissal under Fed. R. Civ. P. 12(b)(6) on the ground that the amended complaint failed to state a claim on which relief can be granted. Plaintiffs objected to that motion, contending that defendants had waived the right to so move by not making the motion along with its 2017 motion to dismiss for forum non conveniens.

D. *The Decision in* Fasano III

In *Fasano III*, the district court noted that the factors underlying its earlier dismissal for forum non conveniens had been principally (a) that plaintiffs' choice of forum warranted diminished deference, given that the only plaintiff resident in the United States is Fasano, and that his stake in the litigation was only about 1/100 as much as that of his French co-plaintiffs; (b) that none of the defendants is a United States entity; and (c) that the Cayman Islands had a strong interest in adjudicating this dispute in its courts given that Dangdang is a Cayman Islands corporation, that the events giving rise to the litigation took place there, that the going-private merger was between two Cayman Islands entities, and that a Cayman Islands court was already

14

conducting a proceeding to determine the fair value of the merger. *See Fasano III*, 482 F.Supp.3d at 165 (discussing *Fasano I*, 2017 WL 6764692, at *6-*12).

On remand, the district court considered the effect of the ADRs' Forum Selection Clause, noting that such a clause, if enforceable, causes the forum non conveniens doctrine to undergo

> "a substantial modification . . . whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) . . . . Valid forum selection clauses must be given controlling weight in all but the most exceptional cases, and if a forum selection clause is indeed deemed valid, the only remaining inquiry is whether there are public interest considerations . . . that weigh against its enforcement.

*Fasano III*, 482 F.Supp.3d at 167 (other internal quotation marks omitted). Nonetheless, the district court observed that this Court, in remanding, had noted that

> the presumption that a forum selection clause is enforceable is "not automatic." . . . "Instead, a district court must consider three factors . . . : whether [i] the clause was reasonably communicated to the party resisting its enforcement; [ii] the clause is mandatory o[r] permissive; and [iii] the claims and parties to the dispute are subject to the clause." . . . The party seeking enforcement of the forum selection clause bears the burden of proving that the presumption of enforceability applies.

*Id*. at 167-68 (quoting *Fasano II*, 921 F.3d at 335). And then,

even if the court determines that the presumption applies, it must still assess whether the presumption "has been properly rebutted by a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Fasano III*, 482 F.Supp.3d at 167 (quoting *Fasano II*, 921 F.3d at 335 (other internal quotation marks omitted).)  In order to rebut the presumption of enforceability,

the party resisting enforcement of a forum selection clause must make a sufficiently strong showing that either:  [i] its incorporation was the result of fraud or overreaching; [ii] the law to be applied in the selected forum is fundamentally unfair; [iii] enforcement contravenes a strong public policy of the forum state; or [iv] trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Fasano III*, 482 F.Supp.3d at 173 (internal quotation marks omitted).

Examining the forum selection clause in the present case, the district court stated:

Reading the Forum Selection Clause within its context, it is clear that it is only designed to cover a narrow subset of claims. The Forum Selection Clause is contained within and connected to the Deposit Agreement's arbitration provisions. (*See* Am. Compl., Ex. 5 at 54).  *The Deposit Agreement broadly provides that all claims arising out of or relating to the ADSs or the Deposit Agreement must be settled by arbitration.* (*See id.*) ("Any controversy, claim[,] or cause of action brought by any party hereto against the Company arising out of or relating to the Shares or other Deposited Securities, the American Depositary Shares, the Receipts[,] or the

16

Deposit Agreement . . . shall be settled by arbitration."). *However, further down, the Deposit Agreement provides a narrow carveout for any claim "relating to or based upon the provisions of the Federal securities laws of the United States or the rules and regulations promulgated thereunder*." (*Id*.). For that subset of claims, arbitration is only required if elected by the claimant. (*See id*.). And critically, it is only those claims "not subject to arbitration" that must be litigated in New York. (*Id*.). *Therefore, a plain reading of the Deposit Agreement makes clear that the Forum Selection Clause only applies to those claims "relating to or based upon" federal securities law and the regulations associated with those laws.*

*Fasano III*, 482 F.Supp.3d at 169 (emphases ours).

The court found it doubtful that plaintiffs' securities claim under § 13(e) of the Exchange Act was cognizable in a private right of action. And it viewed the amended complaint's new invocation of other sections of the Exchange Act or rules thereunder as an "artful[]" attempt to recast as federal securities law claims plaintiffs' original common-law claims of negligent misrepresentation and breach of fiduciary duty, claims that would be governed by the laws of the Cayman Islands. *Id*. at 177.

In addition, the court noted that only Dangdang was a signatory to the Deposit Agreement, *Fasano III*, 482 F.Supp.3d at 170, and found that most of its codefendants are not subject to the ADRs' Forum Selection Clause:

Plaintiffs have failed to show through their pleadings that it would have been foreseeable to any of the other non-signatories that they would have been bound by the Forum Selection Clause.

17

For example, Defendants *Kewen*, *SCI*, and *First Profit*--the investment vehicles controlled by Guoqing Li and Danqian Yao-- have *no relationship with Dangdang whatsoever*. (*See* Am. Compl. ¶¶ 13-14, 16). *It would therefore be wholly unreasonable to find that [any] of the three Defendants should have foreseen being bound by a Forum Selection Clause in a contract to which they had no connection, merely because they participated in a merger six years after the formation of the Deposit Agreement.* Defendant Danqian *Yao* was a senior vice president at Dangdang at the time the company was listed on the NYSE (*id*. at ¶ 15), *but there is otherwise no other indication that Mr. Yao played a role in the listing of the ADSs or would have been aware of the Deposit Agreement and its Forum Selection Clause.* He, too, should not be bound by the Forum Selection Clause. As for Defendant Lijun *Chen, he was not even an employee of Dangdang when the ADSs were issued.* (*See id*. at ¶ 17). There is therefore no basis on which the Court can find that enforcement of the Forum Selection Clause would have been foreseeable to Mr. Chen. Finally, insofar as the Unserved Defendants are relevant to the instant motion, the Amended Complaint does not offer any indication that either Ruby Rong Lu, Ke Zhang, or Xiaolong Li should have foreseen being bound by the Forum Selection Clause. *Although the Amended Complaint makes clear that the Unserved Defendants played an active role in the Merger (see id. at ¶¶ 20-22), it offers no insight into what role, if any, they played in the issuance of the ADSs, which is the relevant transaction for the Forum Selection Clause . . . . Accordingly, the Court finds that the Forum Selection Clause may only be enforced against the signatory--Dangdang--and non-signatories DHC, Guoqing Li, Peggy Yu Yu, and Min Kan.*

*Fasano III*, 482 F.Supp.3d at 171-72 (emphasis added).

In sum, the court found that, given that the ADRs' Forum Selection Clause was applicable to only half of plaintiffs' claims and to only five of the 13

18

named defendants, the public interest factors relied on in *Fasano I* continued to favor dismissal on the ground of forum non conveniens. Dismissing the action on that basis, the court denied defendants' Rule 12(b)(6) motion to dismiss as moot.

This appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend principally (a) that the district court disregarded the mandate of *Fasano II*, which they characterize as ordering the district court simply to find their choice of forum controlling because of the ADRs' Forum Selection Clause, and (b) that the court erred in, *inter alia*, interpreting the scope of the Clause and the relationship of certain of the defendants to the matters within that Clause. While we reverse the decision to dismiss for forum non conveniens, we do not view the district court as having disregarded the mandate of *Fasano II*, which was to consider "whether" the presumption of enforceability is applicable to the ADRs' Forum Selection Clause, "whether" that Clause is applicable to the ADRs' non-signatories, and "whether" the presumption of enforceability was rebutted as "unreasonable, unjust, or the product of fraud or overreaching." *Fasano II*, 921 F.3d

19

at 337. We reject some of the conclusions reached by the district court after exploring those questions.

We conclude principally, for the reasons that follow, that the district court gave the forum selection clause an unwarrantedly narrow interpretation and thereby undercounted the non-signatory defendants who should be covered by the ADRs' Forum Selection Clause; and that the court erred in weighing the public interest factors by attributing undue weight to a Cayman Islands interest in deciding plaintiffs' claims, given that the controlling contract requires all common-law claims to be submitted to arbitration in New York, and giving insufficient weight to the public interest in not having unsettled questions of United States securities laws resolved by a foreign court.

A. *Forum Avoidance and Selection Principles*

Under the principle of forum non conveniens, "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "[I]t has not been attempted to catalogue the circumstances which will justify or require either grant or denial of" a motion to dismiss for forum non conveniens; the "doctrine leaves

much to the discretion of the court to which plaintiff resorts." *Id*. at 508. Generally, the court faced with such a motion may be required to consider both the public interest and the private interests of the litigants. Private interests may include such factors as the relative ease of access to sources of evidence, the availability of witnesses, and the enforceability of a judgment if one is obtained. The public interest may include such factors as court congestion, the interest in having local forums decide local disputes, avoiding the imposition of jury duty on persons within a community having little relation to the litigation, and a forum court's need to apply unfamiliar principles of foreign law. *See generally id*. at 508-09.

Ordinarily, "[t]he decision to dismiss a case on forum non conveniens grounds lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been clearly abused." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (internal quotation marks omitted and emphasis omitted). The court abuses its discretion in ruling on such a motion if "its decision (1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances

those factors." *Aguas Lenders Recovery Group v. Suez, S.A.*, 585 F.3d 696, 699-700 (2d Cir. 2009) ("*Aguas Lenders*") (internal quotation marks omitted).

The forum non conveniens "calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 63 (2013) ("*Atlantic Marine*") (internal quotation marks omitted). "Whatever 'inconvenience' [a party] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972) ("*M/S Bremen*"). "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine*, 571 U.S. at 63 (internal quotation marks omitted). Thus, "where parties . . . agree in advance on a forum that is exclusive of all others, the choice of forum is accorded the *M/S Bremen* presumption of enforceability." *Aguas Lenders*, 585 F.3d at 700. That presumption may be rebutted only if the objecting party "clearly show[s] that" the clause's "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15.

22

In the face of a presumptively valid forum selection clause, a showing of mere inconvenience to parties or witnesses is not sufficient; indeed, the court should consider arguments about "public-interest factors only," for "*[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient* for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64 (emphasis added).

The district court here found that "there is no dispute between the parties as to whether the Forum Selection Clause at issue in this action either was unreasonably communicated or is mandatory." *Fasano III*, 482 F.Supp.3d at 172-73. Thus, the only question as to its presumptive validity was the extent to which the Clause covered the claims and the parties.

B. *The ADRs' Forum Selection Clause*

The forum selection clause at issue in this action, which is part of the arbitration clause set out in the Deposit Agreement for the ADRs evidencing Dangdang ADSs, provides in pertinent part as follows:

> (a) *Any controversy, claim or cause of action* brought by any party hereto against the Company *arising out of or relating to* the Shares or other Deposited Securities, *the American Depositary*

23

*Shares*, the Receipts or the Deposit Agreement, or the breach thereof *shall be settled by arbitration* in accordance with the International Arbitration rules of the American Arbitration Association . . . ; provided, however, . . . that *any such controversy, claim or cause of action . . . relating to or based upon the provisions of the Federal securities laws of the United States* or the rules and regulations promulgated thereunder shall *be submitted to arbitration . . . if, but only if, so elected by the claimant.*

*The place of the arbitration shall be the City of New York, State of New York . . . .*

(b) *Any controversy, claim or cause of action arising out of or relating to . . .* the American Depositary Shares . . . *not subject to arbitration . . . shall be litigated in the Federal and state courts in the Borough of Manhattan, The City of New York.*

(Deposit Agreement's Exhibit A § 23 (emphases added).)

1. *Covered Claims*

As quoted above, in connection with any asserted violations of federal securities statutes or regulations ("Federal Securities Claims"), the arbitration clause--instead of repeating the "arising out of or relating to" phrases or the "American Depositary Shares" frame of reference--simply refers retrospectively to "*any such* controversy, claim or cause of action." Thus, in both respects the scope of the arbitration clause also defines the scope of the Federal Securities Claims that are to

be arbitrated--or that a claimant may instead choose to pursue by litigation in Manhattan. Accordingly, Federal Securities Claims come within the ADRs' Forum Selection Clause if they present controversies, claims, or causes of action arising out of, or relating to, the Dangdang ADSs.

The district court, however, in assessing which of plaintiffs' claims are covered by the Clause, stated that "the relevant transaction for the Forum Selection Clause" is "*the issuance of* the ADSs." *Fasano III*, 482 F.Supp.3d at 172 (emphasis added). We have two fundamental difficulties with this view.

First, the Clause's frame-of-reference language does not mention the "issuance of" Dangdang's ADSs; it refers to the ADSs themselves and thus covers Federal Securities Claims arising out of or relating to any aspect or treatment of the American Depositary Shares. The phrases "arising out of or relating to" are "broad language" of expansive (albeit not unlimited) reach. *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) ("*Roby*"). Indeed, Defendants themselves state that the Dangdang ADRs' "arbitration clause . . . deserves a broad reading." (Defendants' brief on appeal at 20 n.7.)

Second, while plaintiffs' amended complaint (like their original complaint) asserts a claim under § 13 of the Exchange Act, a statute that requires

25

periodic reporting by securities issuers, *see* 15 U.S.C. § 78m(a), plaintiffs assert claims under subsection (e), which is titled "*Purchase* of securities by issuer," *id*. § 78m(e) (emphasis added). That subsection does not govern actions with regard to shares at the time of their issuance. And indeed, plaintiffs complain not about the issuance of Dangdang's American Depositary Shares but rather about the ADSs' confiscation.

The district court recognized that plaintiffs were complaining about the going-private merger; but because it viewed only the "*issuance* of the ADSs . . . [a]s the relevant transaction for the Forum Selection Clause," *Fasano III*, 482 F.Supp.3d at 172 (emphasis added), it erroneously found that "the Forum Selection Clause bears no direct connection to the Merger," *id*. at 172 n.7. Claims and controversies concerning Defendants' actions forcing holders of ADSs to sell or lose their ADSs plainly relate to the ADSs.

We also note that the amended complaint adds claims invoking §§ 10 and 20 of the Exchange Act and rules thereunder. The focus of those provisions, whether or not they are apposite here, is not limited to securities' issuance. Whether or not any of plaintiffs' Federal Securities Claims states a cause of action--indeed, this Court has not determined whether an implied right of action is even available under § 13(e)--the amended complaint alleging the unlawful, fraudulent, or unfair

26

deprivation of plaintiffs' ADSs plainly presents controversies whose substance falls well within the ADRs' Forum Selection Clause frame of reference and are, in the words of *Roby*, 996 F.2d at 1361, "undoubtedly related to" Dangdang's ADSs.

### 2. *Covered Parties*

The district court's unduly narrow focus on the Dangdang ADSs' issuance also infected its conclusion as to what parties the Forum Selection Clause covers. It stated that the five served defendants other than "the signatory--Dangdang--and non-signatories DHC, Guoqing Li, Peggy Yu Yu, and Min Kan" could not be covered by the Clause because there was no indication that they had any connection with the 2010 issuance or listing of the ADSs and thus could not have "*foreseen* being bound by [the] Forum Selection Clause in a contract to which they had no connection, merely because they participated in a merger six years *after* the formation of the Deposit Agreement." *Fasano III*, 482 F.Supp.3d at 172 (emphases added). But because the complaint makes no claim about the issuance of the ADSs, there was no relevant issue as to what might have been foreseen in connection with the "formation of the Deposit Agreement."

The more pertinent question is whether these defendants could plausibly, in this suit, claim to have been blind-sided by the Deposit Agreement's Forum Selection Clause after participating in the going-private merger. The record strongly suggests these defendants' awareness of the contents of the Deposit Agreement as the minority ADS holders were being informed that they were being forced to sell or lose their ADSs.

The entities in question--the five served defendants that the district court found not covered by the ADRs' Forum Selection Clause--were Yao, Chen, Kewen, S&C, and First Profit. All of them were among the entities identified in the Dangdang proxy materials as the going-private-merger's "Buyer Group." And those proxy materials stated multiple times that various aspects of the plan's effect on the ADSs were "*SUBJECT TO THE TERMS AND CONDITIONS OF* APPLICABLE LAW AND *THE ADS DEPOSIT AGREEMENT*." (*See*, *e.g.*, A.350, 361, 438 (capitalization in original; emphases added); *see also id*. 345, 346, 435).

The district court properly recognized that an entity need not have been a signatory to the contract to be covered by a forum selection clause. *See Fasano III*, 482 F.Supp.3d at 170. "[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."

*Aguas Lenders*, 585 F.3d at 701. To date, this Court has declined to adopt a standard governing precisely "when a signatory may enforce a forum selection clause against a non-signatory." *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013) ("*Magi XXI*"). Nonetheless, we have permitted non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound. *Aguas Lenders*, 585 F.3d at 701 (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also Magi XXI*, 714 F.3d at 723 (holding that a *non*-signatory may enforce a forum selection clause against a signatory where the non-signatory is "closely related" to a signatory). In *Aguas Lenders*, we identified several circumstances that could trigger such a result, citing, *inter alia*,

> *Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757-58 (8th Cir.2001) (holding non-signatories were bound by forum selection clause because *non-signatories were "closely related" to the signatory* or had acquiesced to clause by voluntarily bringing suit with signatories); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir.1998) (holding non-signatories bound to forum selection clause on grounds that the non-signatories, who had *provided letters of credit* to signatories, had interests in the litigation that were "directly related to, if not predicated upon" those of the signatories (citation omitted)); . . . *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162-63 (7th Cir.1993) (subjecting non-

29

contracting defendants to forum selection clause because *integrally related to contracting defendants* such that suit should be kept in a single forum).

*Aguas Lenders*, 585 F.3d at 701 (emphases ours).

In the present case, Kewen, S&C, and First Profit fit neatly into the above parade of nonsignatories bound by a forum selection clause; they were investment vehicles involved in the going-private merger. And Kewen and S&C, respectively, were wholly owned and 60% owned by Li, Dangdang's largest stockholder.

But little more need be said about any of the served Defendants' connection to the subject matter of this action, and the propriety of finding the ADRs' Forum Selection Clause applicable to them, than that they were in the "Buyer Group" that caused plaintiffs' ADSs to be eliminated, and that it was repeatedly stated that they would do so "SUBJECT TO THE TERMS AND CONDITIONS OF . . . THE ADS DEPOSIT AGREEMENT"--the contract that contains the Forum Selection Clause. Plainly, then, it was reasonably foreseeable to any member of the "Buyer Group" that they would be subject to the underlying deposit agreement, and therefore its Forum Selection Clause.

We thus conclude that all 10 of the served defendants are covered by the ADRs' Forum Selection Clause.

### 3. *The Public Interest*

The district court concluded that despite Defendants' inability to rebut the presumptive enforceability of the ADRs' Forum Selection Clause, *see Fasano III*, 482 F.Supp.3d at 173, this action should be dismissed for forum non conveniens based on public interest factors, *see id*. at 173-77. The court relied principally on its findings that only five of 13 defendants are covered by the Clause, and that only plaintiffs' Federal Securities Claims are covered, with their common-law claims being governed by Cayman Islands law; on the court's reluctance "to bifurcate the instant action between those claims and parties that are covered by the Forum Selection Clause and those that are not," *id*. at 173; and on the "Cayman Islands['] . . . interest in having this localized controversy decided at home," *id*. at 176. None of these rationales can bear the weight placed on them.

First, the court's erroneous interpretation of the ADRs' Forum Selection Clause led it to err in finding that half of the served defendants are not covered by the Clause. As discussed in the preceding section, all of the served defendants other than Dangdang were in the Buyer Group for the going-private merger that eliminated plaintiffs' Dangdang ADSs and are covered by the Clause. The three unserved defendants, who may or may not be covered by the Clause (the district court stated

31

that according to the amended complaint they "clear[ly] . . . played an active role in the Merger," *Fasano III*, 482 F.Supp.3d at 172), are not necessary parties; their status is not a basis for dismissing this action for forum non conveniens.

Second, the court's reliance on the fact that only half of plaintiffs' claims are covered by the ADRs' Forum Selection Clause seems to have envisioned that a forum-non-conveniens dismissal could avoid "bifurcation" of the case. But the avoidance of bifurcation is not possible if plaintiffs insist on their rights under the Deposit Agreement to have their Federal Securities Claims litigated in court, because all of their other claims must, according to that Agreement, be submitted to arbitration.

Third, although plaintiffs' common-law claims such as breach of fiduciary duty are likely governed by Cayman Islands law given Dangdang's incorporation in the Cayman Islands, the district court's forum-non-conveniens dismissal cannot serve the Cayman Islands' interest in having those claims "decided at home" because those claims are required to be submitted to arbitration, and the Deposit Agreement provides that the "place of the arbitration shall be The City of New York, State of New York." (Deposit Agreement's Exhibit A § 23.)

Finally, because plaintiffs' common-law claims can be pursued only in a New York arbitration, after a forum-non-conveniens dismissal the only claims to be determined in the Cayman Islands would be plaintiffs' Federal Securities Claims. We cannot see any genuine interest of the Cayman Islands in adjudicating United States Federal Securities Claims. In contrast, the United States has a vital interest in having its own courts decide whether to imply a private right of action under § 13(e) of the Exchange Act.

In sum, the public interest factors cannot justify a forum-non-conveniens dismissal.

C. *Plaintiffs' Request To Preclude a Rule 12(b)(6) Motion*

The district court, after concluding that a dismissal for forum non conveniens was appropriate, denied as moot Defendants' alternative motion under Rule 12(b)(6) to dismiss the amended complaint for failure to state a claim. The district court may now address that motion.

We reject plaintiffs' contention that, under Rule 12 of the Federal Rules of Civil Procedure, Defendants' waived the right to make such a motion because they did not combine it with their "initial *forum non conveniens* motion" on "March 15, 2017"

33

(Plaintiffs' brief on appeal at 49). In support of that contention, plaintiffs assert that a forum-non-conveniens motion is one under Rule 12(b)(3) to dismiss for "improper venue"; that Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"; and that the district court should not have allowed Defendants to file a Rule 12(b)(6) motion with their second forum-non-conveniens motion. (Plaintiffs' brief on appeal at 49-50.) This contention does not warrant extended discussion.

First, plaintiffs filed their amended complaint in 2019. A motion to dismiss the amended complaint obviously was not "available" to Defendants in 2017.

Second, a forum-non-conveniens motion is not "a motion under" Rule 12. Rule 12(b)(3) deals with improper venue. But "a forum non conveniens motion does not rest on an assertion that venue is improper--the concern of a motion under Rule 12(b)(3)--but instead asks the court to relinquish the action in favor of another court." 5C Wright & Miller, *Federal Practice and Procedure* § 1386 (3d ed. 2022).

Third, the Rule 12 defenses that are waived by a failure to assert them early are only those "listed in Rule 12(b)(2)-(5)." Fed. R. Civ. P. 12(h)(1). Rule 12 itself

provides that a Rule 12(b)(6) defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . at trial." *Id*. Rule 12(h)(2)(C).

CONCLUSION

We have considered all of Defendants' arguments in support of the judgment and plaintiffs' arguments for precluding Defendants from pursuing a motion to dismiss under Rule 12(b)(6), and have found them to be without merit. The judgment is vacated and the matter is remanded for the district court to consider Defendants' motion to dismiss for failure to state a claim.